IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BRIGHTVIEW GROUP, LP,** | * |
| Plaintiff, | * |
| v. | * Civil Case No. SAG-19-2774 |
| **ANDREW M. TEETERS,** *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Brightview Group, LP ("Brightview") filed this suit against Andrew Teeters ("Teeters"), Ross Dingman ("Dingman"), and Monarch Communities, LLC ("Monarch") (collectively, "the Defendants") on September 19, 2019. ECF 38 (Amended Complaint). After a one-day hearing, on February 21, 2020, this Court issued a Preliminary Injunction in Brightview's favor against Defendants. ECF 91. Twenty-eight days later, on March 20, 2020, Defendants collectively filed a Motion to Alter or Amend the Court's Order and Preliminary Injunction. ECF 112, 112-1 (collectively, "Defendants' Motion"). Brightview opposed, ECF 125, and Defendants replied, ECF 129. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion will be denied.

**I.   FACTUAL BACKGROUND**

Briefly,[1] this action concerns a lawsuit by Brightview, who develops and operates senior living communities. Between 2018 and 2019, two of Brightview's then-high level employees, Defendants Teeters and Dingman, are alleged to have used Brightview documents containing

---

[1] The Court adopts by reference the factual discussion in its February 28, 2020 Amended Memorandum Opinion. ECF 95; *see* 2020 WL 978665, at *1-7 (D. Md. Feb. 28, 2020).

confidential, proprietary, and/or trade secret information, to form their own competing senior living community development business, Defendant Monarch. The array of information is alleged to have included, but not been limited to, Brightview's operational guidelines, proprietary market demographics research, development pipeline, accrual accounting statements, profit and loss statements, and other documents containing confidential, proprietary, and/or trade secret Brightview information. Brightview alleges that Teeters and Dingman retained the documents after having been fired from their employment with Brightview, and continued to use the information even after being sued.

On February 21, 2020, after approximately three months of expedited discovery, this Court granted Brightview's Motion for Preliminary Injunction. ECF 91; *see* ECF 95 (Memorandum Opinion). Specifically, this Court's Order contained the following language:

> Defendants Andrew Teeters, Ross Dingman, and Monarch Communities, LLC, and all persons and entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including, without limitation, their officers, agents, servants, employees, and attorneys, are hereby **ENJOINED** from accessing, using, disclosing, or disseminating any of the Brightview documents set forth in Appendix A to this Order[.]

ECF 91, ¶ 2 (footnote omitted). Appendix A listed the names of specific documents that Defendants were enjoined from "accessing, using, disclosing, or disseminating." *Id.* app. A. The Court, in a subsequent footnote, qualified its Order:

> Counsel for Defendants are permitted, however, to access, use, disclose, and disseminate the relevant Brightview documents as needed to represent their clients in the instant litigation, such as for discovery purposes. To the extent that counsel representing other individuals not a party to this litigation must access, use, disclose, and disseminate the relevant Brightview documents for purposes related to this litigation, they may file an appropriate motion with the Court seeking such leave.

*Id.* ¶ 2, n.1.

The Court's Memorandum Opinion also addressed Defendants' four concerns that this preliminary injunction was overbroad, arguing that the language encompassed (1) documents that Defendants no longer purportedly had access to, (2) documents that lacked evidence showing that they contained proprietary or confidential information, (3) non-trade secret documents, and (4) an unnecessary group of individuals. ECF 95 at 41-43. Most of these contentions, the Court found, lacked merit, although the Court did exclude some documents that Brightview sought to have included in the Order, because they contained no confidential or proprietary information. *Id.*; *see* ECF 91 app. A. Ultimately, Defendants did not appeal the Court's decision.

## II.     LEGAL STANDARDS

The parties disagree as to which Federal Rule of Civil Procedure governs Defendants' Motion. ECF 112-1 at 3-4; ECF 125 at 3-5. Because, under any framework of review, Defendants are not entitled to their requested relief, the Court need not definitively resolve the parties' technical arguments. Generally, whether a motion is filed under Rule 52(b), 54(b), 59(e), or 60(b), the moving party must demonstrate a clear legal error in the Court's prior ruling, provide newly discovered evidence that warrants reconsideration, or cite some intervening change in controlling law. *See* Fed. R. Civ. P. 60(b) (listing six reasons that may support a motion under the rule, two of which account for newly discovered evidence, as well as "any other reason that justifies relief"); *Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005) (listing these three factors for Rule 59(e) review); *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) (explaining that courts in this District generally look to the Rule 59(e) and Rule 60(b) factors in determining a Rule 54(b) motion for reconsideration); *Signal Perfection, Ltd. v. McPhee Elec., Ltd.*, No. WGC-10-2331, 2015 WL 5136565, at *2 (D. Md. Aug. 31, 2015)

(explaining that a Rule 52(b) motion is, essentially, "intended to correct manifest errors of law or fact or to present newly discovered evidence").[2]  Specifically, with regard to injunctions, courts have the power "to modify an injunction in adaptation to changed circumstances." *De Simone v. VSL Pharms., Inc.*, No. TDC-15-1356, 2018 WL 4567111, at *2 (D. Md. Sept. 24, 2018) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)); *see also Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647 (1961) ("There is also no dispute but that a sound judicial discretion may call for modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.").[3]

## III.   ANALYSIS

Defendants have moved to alter or amend the Preliminary Injunction Order in two ways: (1) to make clear that Defendants may use the information, contained in the Appendix A documents, that is also publicly available; and (2) to clarify that Defendants may develop senior living communities on any property that is not listed on the pipeline document in Appendix A, or that has also been made publicly available.  ECF 112-1 at 4-12.  Brightview opposes the requests, arguing that either clarification would merely be an "advisory opinion" that Defendants are otherwise unentitled to, because there is no change in the law, or the facts, to justify their requested relief.  ECF 125 at 5-13.

First, the Court does not believe that it is necessary to tinker further with the Order's language to address Defendants' hypothetical concerns regarding publicly available information

---

[2] Brightview advocates strongly for Rule 54(b) to apply, because under Local Rule 105.10, Defendants' Motion would have been filed two weeks too late. ECF 125 at 5-6.  The Court need not rule on this ground, though, since Defendants are not entitled to relief under any Rule.

[3] It may be that no Federal Rule of Civil Procedure is necessary to permit a Court to modify a preliminary injunction it entered.  *See also Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 578 (5th Cir. 1974) ("There is no doubt that the district court has continuing jurisdiction over a preliminary injunction.").

contained within Appendix A documents. The unique facts of this case required the Court to tailor preliminary injunctive relief that would prohibit Defendants' use, disclosure, access, and dissemination of the Appendix A documents, all of which contain trade secret, proprietary, and/or confidential Brightview information. Some of those documents might also contain information that is readily available from other public sources. If Defendants are able to obtain publicly available information without using or accessing any of the Appendix A documents, that acquisition could not, by law, be enjoined, no matter what reading of the Preliminary Injunction Order Brightview may hypothetically proffer. *See* 18 U.S.C. § 1839(3)(A)-(B) (2018) (defining a legally protected trade secret as something that "[d]erives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use"); Md. Code Ann., Com. Law § 11-1201(e) (West 2019) (same).[4] Because the acquisition and use of such publicly available information does not fall within the prohibitions of the Preliminary Injunction Order, then, the Court need not amend the Order on this ground.

Defendants next seek to amend the Preliminary Injunction Order to specify which property, or properties, Defendants may lawfully develop during the course of the litigation. Defendants first request that the Court amend the Preliminary Injunction Order to specify that Defendants may develop any property not listed on the sole "pipeline document" provided

---

[4] Of course, in some cases, a document comprised solely of publicly available information can attain trade secret status if the compilation of that information in one document would be economically valuable to competitors. *See AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 96 (4th Cir. 2018) ("Courts have long recognized that 'a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.'" (quoting *Imperial Chem. Indus. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742 (2d Cir. 1965))). None of the Appendix A documents, however, were deemed to be trade secret under this rationale. *See* ECF 95.

during the Preliminary Injunction Hearing, which encompassed properties in Maryland and Virginia.  ECF 112-1 at 10-11; *see* ECF 69-11 (Brightview's Maryland and Virginia Senior Living Pipeline).  Such a ruling, at this stage, would be inappropriate.

During the proceedings leading up to the Preliminary Injunction Hearing, this Court, on multiple occasions, hinted that Brightview's requested relief should focus on specific examples of misappropriation in each of its numerous categories of claimed trade secret documents.  *See, e.g.*, ECF 57 at 2 ("For the purposes of seeking a preliminary injunction, however, Brightview would be well-advised, for example, to isolate one pricing sheet that Defendants misappropriated that has caused Brightview irreparable harm.  Narrowing its contentions in that manner will streamline Brightview's presentation at the one-day Preliminary Injunction Hearing, and will expedite the Court's consideration of Brightview's motion.").  There may exist other Brightview pipeline documents that may be entitled to trade secret protection, or may otherwise be confidential or proprietary in nature, like the Maryland and Virginia pipeline document.  Telling Defendants now that any property that might be listed in another Brightview pipeline document is fair game could, in effect, rubber-stamp further potential misappropriation of Brightview trade secrets, or could further unlawful competition, thereby undermining the purpose of the Preliminary Injunction Order.  *See Elco Corp. v. Microdot Inc.*, 360 F. Supp. 741, 757 (D. Del. 1973) ("[A] modification which will not give complete assurance that the objectives of the original injunction will be achieved should not be permitted.").

Defendants also ask the Court to amend the Preliminary Injunction Order to allow them to develop any senior living site that is being publicly marketed.  ECF 112-1 at 11-12.  In support of its request, Defendants provide evidence showing that one of the properties contained on the development pipeline (which is an Appendix A document) is now being marketed "broadly" to

senior living developers by a real estate broker. *Id.*; ECF 112-2.  According to Defendants, on December 5, 2019, the real estate broker for this particular property, located in Reston, Virginia, sent a request for proposals for the property to "approximately 10 or more groups," including Teeters.  ECF 112-1 at 11-12; ECF 112-2 at 1-2.  Based on this, Defendants argue, there is "direct evidence that the site is not a Brightview trade secret," and that Defendants "should therefore be permitted to secure this site and develop the property."  ECF 112-1 at 12 (emphasis in original).

To be sure, this Court's Memorandum Opinion did not definitively conclude whether Brightview's Maryland and Virginia development pipeline was a trade secret.  *See* ECF 95 at 18-23 (considering only whether Brightview's underwritings, lease-up reports, and cross-property operating reports were trade secrets); *id.* at 29 (including the project pipeline as one of those documents that "at minimum" contained "confidential and proprietary Brightview information").  Notably, even if that development pipeline was a trade secret, there could be no misappropriation to enjoin if Defendants pursue identical development opportunities acquired through "reverse engineering, independent derivation, or any other lawful means of acquisition."  18 U.S.C. § 1839(6)(B); *see Bond v. PolyCycle, Inc.*, 127 Md. App. 365, 378 (1999) ("A trade secret law, however, does not offer protection against discovery by fair and honest means, such as by independent invention, accidental disclosure, or by so-called reverse  engineering . . . ." (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475-76 (1974))).  The injunction in this case prohibits accessing, using, disseminating, or disclosing the Appendix A documents, but it does not enjoin the pursuit of any specific development opportunity that is not aided, in any way, by the further use, access, dissemination, or disclosure of any Appendix A document.

The tort of unfair competition, however, is a "necessarily open-ended" one, generally encompassing those business practices that "substantially interfere[] with the [plaintiff's] ability to compete on the merits of their products or otherwise conflicts with accepted principles of public policy recognized by statute or common law." *Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 691 (D. Md. 2012) (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 1 (1995)).  The Court can conceive of instances in which, despite having received an independent solicitation from a real estate broker, other facts underlying Defendants' knowledge of that development site, or underlying how Defendants received the solicitation in the first place, could nonetheless give rise to an unfair competition claim as to that particular property.  While the Court recognizes, and appreciates, Defendants' efforts to comply with the Order and to ensure that their conduct adheres to its terms, the Court declines to decide *carte blanche* an issue that is much more appropriately decided on an *ad hoc* basis, with more complete information.  It is sufficient to say, at this stage, that the law has always provided that an individual may lawfully compete with his former employer (absent some enforceable non-compete provision in an employment agreement, which is not present here), and nothing in the Court's Preliminary Injunction Order intended to, or could have, nullified that principle.  *See also, e.g.*, *Md. Metals, Inc. v. Metzner*, 282 Md. 31, 38 (1978) ("Once the employment relationship comes to an end, of course, the employee is at liberty to solicit his former employer's business and employees, subject to certain restrictions concerning the misuse of his former employer's trade secrets and confidential information.").

Finally, even if Defendants' Motion is read to seek a modification specifically as to the Reston, Virginia property, Defendants' requested modification comes too late.  "A motion to modify a preliminary injunction is meant only to relieve inequities that arise *after* the original

8

order." *Favia*, 7 F.3d at 338; *see also Merrell-Nat'l Labs., Inc. v. Zenith Labs., Inc.*, 579 F.2d 786, 791-92 (3d Cir. 1978) (affirming a trial court's denial of a motion to modify a preliminary injunction because the evidence presented "could have been produced on the original motion for an injunction"); CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2961 (3d ed. 2010) ("[M]odification [of an injunction] is not warranted if the court determines that the moving party is relying upon events that actually were anticipated when the decree was entered."); *cf. Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) ("The Rule 59(e) motion may not be used to . . . present evidence that could have been raised prior to the entry of judgment." (citation omitted)); *Carrero*, 310 F. Supp. at 584 (explaining that relief from an interlocutory order under Rule 54(b) is inappropriate where the "new" evidence brought forward was available to the moving party in litigating the previous dispute). By Defendants' own admission, the evidence regarding the Reston, Virginia property was available in December, 2019, an entire month before the hearing held on the Preliminary Injunction Motion on January 15, 2020, *see* ECF 77. In fact, one day *before* this email was purportedly sent to Teeters, Brightview served Defendants with the exact files it was basing its request for preliminary injunctive relief upon, including the Maryland and Virginia pipeline document. ECF 57 at 6. Despite this ample notice, Defendants failed to put forth their public marketing evidence at the hearing. Under these circumstances, modification of the preliminary injunction to expressly exempt this particular property is inappropriate.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Alter or Amend the Preliminary Injunction Order, ECF 112, is DENIED.  An implementing Order follows.   Brightview's pending Motion for Leave to Amend, ECF 132, will be decided by separate opinion.


Dated:  July 15, 2020                                            /s/
                                                             Stephanie A. Gallagher
                                                             United States District Judge