IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BRIGHTVIEW GROUP, LP,** * | |
| * | |
| Plaintiff, * | |
| * | |
| v. * | Civil Case No. SAG-19-2774 |
| * | |
| **ANDREW M. TEETERS,** *et al.*, * | |
| * | |
| Defendants. * | |
| * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Brightview Group, LP ("Brightview") filed this suit against Andrew Teeters ("Teeters"), Ross Dingman ("Dingman"), and Monarch Communities, LLC ("Monarch") (collectively, "the Defendants") on September 19, 2019. ECF 1. Brightview filed an Amended Complaint on November 5, 2019, ECF 38, which each Defendant answered on November 19, 2019, ECF 51-53. Brightview seeks to recover compensatory and exemplary damages, and permanent injunctive relief, stemming from Defendants' alleged misappropriation of, and conspiracy to misappropriate, Brightview's trade secrets. ECF 38, ¶¶ 106-47. Specifically, Brightview asserts six claims for relief: Misappropriation of Trade Secrets under the federal Defend Trade Secrets Act and the Maryland Uniform Trade Secrets Act, *id.* ¶¶ 106-120 (Counts I & II); "Breach of Fiduciary Duty/Usurpation of Corporate Opportunity," *id.* ¶¶ 121-28 (Count III); Unfair Competition, *id.* ¶¶ 129-35 (Count IV); Civil Conspiracy, *id.* ¶¶ 136-39 (Count V); and Trespass to Chattels, *id.* ¶¶ 140-47 (Count VI).

On May 15, 2020, Brightview filed a Motion for Leave to File Second Amended Complaint, without an accompanying Memorandum of Law. ECF 132 ("the Motion"). The Defendants opposed, ECF 133 (Monarch); ECF 137 (Teeters & Dingman), and Brightview

1

replied, ECF 140.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons that follow, Brightview's Motion will be denied.

I.  **FACTUAL BACKGROUND**

Briefly,[1] this action concerns a lawsuit by Brightview, who develops and operates senior living communities.  Between 2018 and 2019, two of Brightview's then-high level employees, Defendants Teeters and Dingman, are alleged to have used Brightview documents containing confidential, proprietary, and/or trade secret information, to form their own competing senior living community development business, Defendant Monarch.  The array of information is alleged to have included, but not been limited to, Brightview's operational guidelines, proprietary market demographics research, development pipeline, accrual accounting statements, profit and loss statements, and other documents containing confidential, proprietary, and/or trade secret Brightview information. Brightview alleges that Teeters and Dingman retained the documents after having been fired from their employment with Brightview, and continued to use the information even after being sued.

Despite the fact that the parties had nearly three months of expedited discovery prior to the Preliminary Injunction Hearing on January 16, 2020, this Court entered a standard Scheduling Order on February 21, 2020.  ECF 93.  As relevant here, the Scheduling Order established that any amendment of pleadings must occur before April 6, 2020, and that the discovery deadline would be July 6, 2020.  *Id.* at 2.  Not long thereafter, however, the COVID-19 pandemic exploded, disrupting legal proceedings across Maryland, and across the country. Pursuant to the Standing Orders this Court issued to address the pandemic, as a general rule, all filing deadlines in all cases "originally set to fall between March 16, 2020, and June 5, 2020,"

---

[1] The Court adopts by reference the factual discussion in its February 28, 2020 Amended Memorandum Opinion.  ECF 95; *see* 2020 WL 978665, at *1-7 (D. Md. Feb. 28, 2020).

2

were extended by eighty-four (84) days.  Standing Order 2020-07 at 1-2, *In re: Court Operations Under the Exigent Circumstances Created by COVID-19*, Misc. No. 00-308 (D. Md. Apr. 10, 2020), ECF 99.  The eighty-four day extension did not apply, however, if "the presiding judge in an individual case set[] a different date by an order issued after the date of [Standing Order 2020-07]." *Id.* at 1.

In the midst of the COVID-19 pandemic, on April 17, 2020, after the issuance of Standing Order No. 2020-07, Brightview filed a Consent Motion to Modify Deadlines for Expert Disclosures.  ECF 123.  In the Motion, Brightview stated:

> *Under the current schedule as set forth in the Court's February 21, 2020 Scheduling Order [ECF 93]*, Brightview's deadline to serve its Rule 26(a)(2) disclosures is April 21, 2020. Although Brightview has engaged an expert and is working expeditiously with its expert to comply with the requirements of Rule 26(a)(2), the COVID-19 pandemic and associated work-from-home requirements has made this process somewhat cumbersome and inefficient. Accordingly, Brightview requires some additional time to complete its Rule 26(a)(2) disclosures . . . .

*Id.* at 1 (emphasis added).  The motion sought an extension, by approximately eleven days, of each Rule 26(a)(2) disclosure deadline initially set forth in the Court's Scheduling Order.  *Id.* at 1-2; *see* ECF 93 at 2.  The language in Brightview's proposed order specified that "all other deadlines set forth in the February 21, 2020 Scheduling Order [ECF 93] *shall remain in full force and effect*."  ECF 123-1, ¶ 3 (emphasis added).  This Court, by Paperless Order, granted the motion, thereby "approving deadlines set forth therein."  ECF 124.

On June 15, 2020, after the briefing for the instant Motion was completed, Brightview again filed a Consent Motion for Extension of Time, this time regarding the deadline for designating rebuttal expert witnesses.  ECF 144.  Brightview stated:

> *Under the current schedule as set forth in the Court's February 21, 2020 Scheduling Order [ECF 93], as modified by the Court's April 17, 2020 Paperless Order [ECF 124]*, Brightview's deadline to serve its Rule 26(a)(2) disclosures is

3

> June 15, 2020. The 14-day period contemplated by the initial scheduling order to engage and prepare a rebuttal expert has proven, under the current remote work circumstances, to be an insufficient period of time. Although Brightview has worked to engage an expert and is working expeditiously with the expert to comply with the requirements of Rule 26(a)(2), the COVID-19 pandemic and associated work-from-home requirements have made this process somewhat cumbersome and inefficient. Accordingly, Brightview requires a brief additional period to complete its Rule 26(a)(2) rebuttal disclosure . . . .

*Id.* at 1-2 (emphasis added). United States Magistrate Judge Deborah L. Boardman granted the motion by Paperless Order. ECF 146; *see* ECF 100 (referring this matter to Judge Boardman for discovery and all related scheduling).

Brightview now moves to file a Second Amended Complaint. ECF 132. While adding no new parties, the Proposed Second Amended Complaint ("PSAC"), ECF 132-2, would provide a number of substantive additions. The PSAC would first add supplemental facts regarding Defendants' interactions with Mark Stebbins. *Id.* ¶¶ 83-91. Stebbins is the chairman and CEO of PROCON LLC, "a construction and design firm that has partnered with Brightview on projects collectively worth hundreds of millions of dollars." *Id.* ¶ 84. In April, 2019, Teeters and Dingman (while still employed with Brightview), along with Michael Glynn, met with Stebbins about partnering with the three of them on their new business venture (which would later become Monarch). *Id.* ¶¶ 85-86. Though Stebbins initially deemed the venture not profitable enough to justify his investment, Teeters, Dingman, and Glynn eventually were able to successfully convince Stebbins to partner with them, due in part to their use of "Brightview's sensitive business information." *Id.* ¶¶ 87-90, 94, 96. Stebbins is now "an equitable owner of Monarch and the primary source of funding for Monarch's operations and seed capital." *Id.* ¶ 89.

The PSAC also provides new allegations regarding a "mudslinging" campaign initiated by Stebbins. Brightview alleges that in October, 2019, "after this lawsuit was filed, Stebbins

4

pressured Brightview's leadership to suspend the litigation pending further negotiations between the parties." *Id.* ¶ 99.  Stebbins allegedly threatened that if Brightview did not stay its litigation, "things will come out that are not the interests of Brightview." *Id.* ¶ 100.  After Brightview rebuffed this threat, Stebbins made demands on "certain Brightview investor funds to review books and records and obtain a full investor list," and in Stebbins's words to Brightview's executives, these demands were "just the first stage of the mudslinging campaign." *Id.* ¶¶ 101-02.  Stebbins then, through an entity that invests in certain Brightview investor funds, "brought an action against those funds in New Hampshire state court seeking books and records of the funds," which was dismissed for failure to comply with a forum selection clause. *Id.* ¶ 103.  That case is now before the American Arbitration Association. *Id.* ¶ 105.  Further, on February 18, 2020, Brightview received a letter from the New Hampshire Bureau of Securities Regulation "stating that the bureau had commenced a formal investigation into the funds that were defendants in the New Hampshire litigation and arbitration." *Id.* ¶ 107.  Brightview alleges that Stebbins, or one of his affiliates, filed a complaint with that bureau "in late 2019 or early 2020," in furtherance of Stebbins's threatened "mudslinging." *Id.* ¶ 108-09.  Brightview claims that none of this "mudslinging" would have occurred but for the instant lawsuit to protect its trade secret information, and is instead "an attempt by Stebbins and the Monarch co-conspirators to gain leverage in this lawsuit and to pressure Brightview to dismiss this lawsuit." *Id.* ¶¶ 110-112. Notably, Stebbins is not named as an additional Defendant in the PSAC.

Based on this "mudslinging" campaign, Brightview seeks to make two substantive changes to its claims for relief.  First, Brightview proposes supplementing its damages claims in Counts I and II, the trade secret misappropriation claims, to include

> the costs and expenses, including reasonable attorneys' fees, that it has incurred in defending against the Monarch co-conspirators' mud slinging campaign,

5

>including the New Hampshire litigation, the subsequent arbitration, and the securities investigation, all of which costs are directly attributable to Brightview's pursuit of its rights under the Defend Trade Secrets Act of 2016 [and under the Maryland Uniform Trade Secrets Act].

*Id.* ¶¶ 139(F), 146(F).

Second, Brightview proposes adding a new claim for relief against Teeters and Dingman for "Tortious Interference with Business Relations." *Id.* ¶¶ 174-85. Brightview alleges that Teeters's, Dingman's, and Glynn's[2] misuse of Brightview trade secret, confidential, and proprietary information, "to lure Stebbins to invest with them," caused Brightview to lose "an important business partner." *Id.* ¶¶ 175-79. Brightview claims that "[o]n information and belief, Teeters and Dingman knew that Stebbins's participation in the Monarch venture, through which they intended to compete directly and unlawfully with Brightview, would interfere with Brightview's business relationship with PROCON." *Id.* ¶ 180. Brightview also alleges, on information and belief, that Teeters and Dingman "supplied Stebbins with information, whether true or false, that enabled him to commence his" mudslinging campaign, and that Teeters and Dingman knew that this mudslinging campaign would "further interfere with Brightview's business relationship with PROCON." *Id.* ¶¶ 181-82. As a result of this course of conduct, Brightview's relationship with PROCON has ended, requiring Brightview to "incur the time and expense to find new building and design partners and educate those partners about Brightview's unique vision for senior living." *Id.* ¶¶ 183-85. Brightview seeks a damages award to compensate for this lost business relationship, the cost of establishing a new one, and the "costs and expenses in pursuing this action." *Id.* ¶ 185(A)–(D).

---

[2] Glynn is still not a Defendant in this action, even under the PSAC. *See generally* ECF 132-2.

6

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  However, the Rule requires courts to "freely give leave when justice so requires." *Id.*  The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010).  Accordingly, leave to amend should be denied only if "prejudice, bad faith, or futility" is present.  *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986) (interpreting *Foman v. Davis*, 371 U.S. 178 (1962)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012).  Ultimately, the decision to grant leave to amend rests in this Court's discretion.  *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

## III.  ANALYSIS

Collectively, Defendants assert that Brightview's request leave to amend should be denied for three reasons.  First, all Defendants argue that Brightview's motion comes after the deadline set forth in the Court's Scheduling Order, ECF 93, and that, as such, Brightview cannot satisfy Rule 16's "excusable neglect" standard for seeking delayed leave to amend.  *See* ECF 133 at 8-9; ECF 137 at 2-3, 5-7.  Second, all Defendants argue that even under the typical Rule 15 analysis, Brightview's proposed costs and expenses claims under Counts I and II are futile.  ECF 133 at 9-11; ECF 137 at 4.  Finally, Teeters and Dingman argue that Brightview's proposed tortious interference claim is both futile and prejudicial.  ECF 137 at 7-8.  Brightview counters that its motion was timely and, even if it was not, it asserts that it "would easily" satisfy the good cause standard, without further elucidation.  ECF 140 at 3-7.  Characterizing Defendants' oppositions as "baseless," *id.* at 7, Brightview contends that its proposed amendments are neither

futile nor prejudicial, *id.* at 7-15.  Far from being "baseless," the Court agrees with Defendants that Brightview is not entitled to leave to file its PSAC.

Although Rule 15(a)(2) advocates that the Court should "freely" give leave to amend, Rule 16(b)(4) dictates that a scheduling order set by the Court "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see also Nourison Rug Corp. v. Parvizian,* 535 F.3d 295, 298 (4th Cir. 2008) ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.").

The central issue becomes, then, whether the April 6, 2020 deadline set forth in the Scheduling Order for filing amended pleadings controls, or whether Standing Order 2020-07 extended that deadline by eighty-four days.  Brightview argues that Standing Order 2020-07 controls, because this Court never issued an order overriding Standing Order 2020-07's general extension provision.  ECF 140 at 3-4.  Defendants argue, however, that Brightview's assertions in its April 17, 2020 consent motion for extension of time demonstrate the parties' intent to be bound by, and the Court's reinforcement of, the original terms of the Scheduling Order, notwithstanding Standing Order 2020-07.  ECF 133 at 6, 8; ECF 137 at 1, 6 (incorporating Monarch's argument).  The Court agrees with Defendants.

It is true that, upon the issuance of Standing Order 2020-07, each of the filing deadlines in the Scheduling Order was extended by eighty-four days.  It is also true that a separate Standing Order generally exempted "the conduct of discovery" from the suspension of deadlines set forth in Standing Order 2020-07.  *See* Order at 1, *In re: COVID-19 Pandemic Procedures*, Misc. No. 20-146 (D. Md. filed Apr. 10, 2020), ECF 13.  But Brightview's Consent Motion for Extension of Time, filed on April 17, 2020, evidenced to the Court the parties' intent to be bound

8

by the terms of the original Scheduling Order. The proposed order set forth the parties' requested extended deadlines for Rule 26(a)(2) disclosures and then went on to clarify that "all other deadlines set forth in the February 21, 2020 Scheduling Order [ECF 93] shall remain in full force and effect." ECF 123-1, ¶¶ 2-3. Whatever Brightview's now-expressed subjective intent may have been in including this language, *see* ECF 140 at 4, in granting the consent motion, this Court construed this proposed language as a request by the parties to reaffirm that the original Scheduling Order governed all future proceedings in this matter. The Court assented to that position through its Paperless Order, given the work-at-home restrictions that were in place at the time. *See* ECF 124 (granting the consent motion "and approving deadlines set forth therein"). If the parties intended only for the discovery deadlines set forth in the original Scheduling Order to be binding, the parties could have jointly submitted such language. The parties could have also included *no* language at all referencing the original Scheduling Order. Instead, the parties here asked the Court to enter an Order that, in part, would reaffirm that "*all other deadlines* set forth" in the original Scheduling Order "*shall remain in full force and effect*." ECF 123-1, ¶ 3 (emphasis added). The Court will hold the parties to the plain language of their requested relief, and find that the original Scheduling Order controls, notwithstanding Standing Order 2020-07. As such, Brightview must satisfy the good cause standard set forth in Rule 16(b)(4), before this Court will find leave to amend under Rule 15 to be appropriate.

In *Nourison Rug,* like in the instant case, a party sought amendment of its pleading after the expiration of the deadline in the scheduling order. 535 F.3d at 297. The Fourth Circuit noted that, "Given their heavy case loads, district courts require the effective case management tools provided by Rule 16." *Id.* at 298. Accordingly, the Fourth Circuit explained that the party seeking to modify the scheduling order must meet the good cause requirement of Rule 16(b)(4),

9

before considering the standard for amendment of a pleading in Rule 15(a)(2). *Id.*; *see also Cook v. Howard,* 484 F. App'x. 805, 814-15 (4th Cir. 2012) ("[U]nder Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment.")

To establish good cause, the party seeking to amend the scheduling order must "show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'" *Cook,* 484 F. App'x at 815 (quoting 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1522.2 (3d ed. 2010)); *see also Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) ("The primary consideration of the Rule 16(b) 'good cause' standard is the diligence of the movant. Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.' . . . 'If [the moving] party was not diligent, the inquiry should end.'" (citations and emphasis omitted)); *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) ("Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." (internal citations and quotations omitted)).

Applying these standards, Brightview has failed to establish good cause for its tardy motion for leave to amend. Defendants, correctly, point out that the "mudslinging" campaign that Stebbins initiated allegedly began in October, 2019. *See* ECF 132-2, ¶ 99. Brightview executives were aware of this, too – Brightview itself alleges an in-person meeting between Arnold Richman, Chairman of Brightview, David Carliner, Brightview's Executive Vice

10

President, and Stebbins, in which Stebbins told Richman and Carliner directly that "the books and records demand *he had made* was just the first stage of the mudslinging campaign." *Id.* ¶¶ 39, 102 (emphasis added). Brightview then received notice of the New Hampshire state court litigation against the Brightview funds "shortly after" Stebbins made these threats. *Id.* ¶ 103. Brightview's funds became embroiled in an arbitration proceeding in New Hampshire sometime thereafter. *Id.* ¶ 105. In essence, Brightview had notice of the facts giving rise to its claim for attorneys' fees since the beginning of the arbitration proceeding, which began at an unspecified time in late 2019.

Brightview also had notice of most the facts underlying its tortious interference claim at the time it filed its Amended Complaint *as of right* on November 5, 2019. *See* ECF 38. In its Amended Complaint, Brightview alleged that Teeters sent Stebbins "an underwriting based on Brightview's template and detailed assumptions," that Stebbins told Brightview "that he may seek to work with Teeters and Teeters's new company," and that Stebbins was a "beneficial owner[] of Monarch." *Id.* ¶¶ 83-87. These same allegations undergird Brightview's tortious interference claims. *See* ECF 132-2, ¶¶ 174-85. For reasons unknown, however, Brightview omitted allegations regarding the October, 2019 meeting between Stebbins and Brightview executives, when Stebbins informed Carliner and Richman that his "mudslinging" would start. *See generally* ECF 38. Brightview could have sought leave to amend shortly thereafter, after the New Hampshire litigation and arbitration proceedings commenced, to assert its tortious interference claim, but again, it chose not to.

Given this ample notice, the Court looks to Brightview to proffer some reason why it delayed in seeking leave to file a Second Amended Complaint to include these claims.

Brightview attempts to address its notice of the facts underlying its amendments through the following argument:

> Teeters, Dingman, and Monarch assert that Brightview was on notice of its new claim and damages for some period before filing its Motion to Amend. . . . This assertion, though, illustrates precisely why Rule 15(a)(2) prescribes a deferential amendment standard. Teeters's, Dingman's, and Monarch's noncompliance with their discovery obligations has stymied Brightview's learning *more* about Defendants' *early coordination* with Mark Stebbins. Nonetheless, Brightview (and Teeters, Dingman, and Monarch) are well aware that the "October Meeting" at which Stebbins first threatened Brightview's senior leadership was just the beginning.

ECF 140 at 4-5 (emphasis added). This argument, however, fails to even indirectly address any for why it needed to wait until May 15, 2020, to seek leave to file a Second Amended Complaint to include allegations regarding events that occurred, and were readily known to Brightview, between October, 2019 and February, 2020. On this ground, alone, courts in this District have denied tardy motions for leave to amend. *See Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 632 (D. Md. 2003) (no reason provided other than counsel having "overlooked" the deadline); *Rassoull*, 209 F.R.D. at 374 (plaintiff wholly failed to provide "explanations, reasons, or further information regarding the lateness of the motion").

In any event, whatever more Brightview wishes it knew before, it is apparent to the Court, as discussed above, that the vast majority, if not all, of the factual allegations contained in the PSAC could have been alleged months in advance of the amendment deadline in the Scheduling Order. In fact, the most recent allegation that Brightview offers regarding the mudslinging campaign – Brightview's receipt of the February 18, 2020 letter from the New Hampshire Bureau of Securities Regulation – came three days *before* the Court issued the Scheduling Order. Similarly, whatever more Brightview might have recently learned regarding the further dissemination of Brightview trade secrets by Teeters and Stebbins, ECF 140 at 6, is

12

equally beside the point. None of these "new" discoveries changes the fact that, since the Court first issued its Scheduling Order, Brightview had notice of sufficient facts to plead its request for attorneys' fees, and its tortious interference claim, and has offered no reason why it waited until May to seek leave to amend. *See Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 590-91 (D. Md. 2018) (finding that the defendant's argument that it "had not previously 'appreciated' its potential counterclaim, despite having knowledge of the document that purportedly gave rise to it, does not support its claim of diligence," especially where that appreciation came about five months prior to the amendment deadline); *CBX Techs., Inc. v. GCC Techs., LLC*, No. JKB-10-2112, 2012 WL 3038639, at *4 (D. Md. July 24, 2012) ("[Plaintiff] has not offered any facts that would support an amended complaint and that were not discoverable by [plaintiff] through proper diligence prior to the deadline of the original scheduling order for filing a motion for leave to amend the complaint."); *Crouch v. City of Hyattsville*, No. DKC-09-2544, 2012 WL 718849, at *2-4 (D. Md. Mar. 5, 2012) (finding no good cause where the plaintiff had notice of sufficient facts to plead his *Monell* claim since the outset of the litigation, despite the fact that those facts may not be enough to prove the claim, because Rule 8 does not require such stringent evidentiary proof at the pleading stage); *see also Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768 (D. Md. 2010) ("[A] finding of 'good cause' is justified under Rule 16(b) where at least some of the evidence *needed* for a plaintiff to prove his or her claim did not come to light until after the amendment deadline." (citation omitted) (emphasis added)).

Accordingly, under these circumstances, the Court finds that Brightview has demonstrated no good cause for filing its motion for leave to amend the complaint after the deadline provided in the Scheduling Order. And where a moving party fails to demonstrate good cause under Rule 16(b), the Court need not address the remaining Rule 15(a) factors. *See, e.g.*,

*Nourison Rug*, 535 F.3d at 299 (declining to address the Rule 15(a) factors after upholding the trial court's finding of no good cause under Rule 16(b)).

While the Court need not conclusively address the parties' arguments as to the Rule 15(a) factors, two observations bear mentioning. First, even if the Court had found good cause to excuse Brightview's delayed filing, the Court has grave concerns about the futility of Brightview's attorneys' fees claim. It would take quite a stretch of the plain language of the two trade secret statutes invoked here to find that fees incurred in collateral litigation (involving what appears to be a party other than Brightview itself) are recoverable by Brightview in its trade secret action. *See* 18 U.S.C. § 1836(b)(3)(D) (2018) (providing courts the power to award "reasonable attorney's fees to the prevailing party" if "the trade secret was willfully and maliciously misappropriated"); Md. Code Ann., Com. Law § 11-1204 (West 2020) (same). It appears equally questionable that the collateral litigation doctrine would apply in this case. That doctrine requires, *inter alia*, that the collateral litigation at issue constitute "the natural and proximate consequence of the injury complained of" in the initial suit. *E. Shore Title Co. v. Ochse*, 453 Md. 303, 331 (2017) (citation omitted). Whatever confidential, proprietary, or trade secret information Teeters and Dingman may have provided Stebbins about Brightview's equity funds, the Court questions whether Stebbins's own actions to use that information in his mudslinging are the natural and proximate consequence of Teeters's and Dingman's original disclosure.

Second, while Brightview's delayed filing of its motion for leave to amend prevents it from filing its tortious interference claim against Teeters and Dingman, the Court notes that the same conduct that underlies that tortious interference claim – Teeters's and Dingman's alleged disclosure of Brightview's trade secret, confidential, and/or proprietary information in order to

lure Stebbins into future business relations with Monarch, and not Brightview – is also thoroughly encapsulated in Brightview's current trade secret misappropriation and unfair competition claims. The Court doubts, however, that Stebbins's subsequent and intentional "mudslinging" campaign is attributable to those initial allegedly wrongful actions by Teeters and Dingman. If Brightview seeks relief for damages caused by Stebbins's "mudslinging" campaign, Brightview is free to pursue relief against Stebbins in another lawsuit. The time for amending the complaint in the instant case, in which discovery is all but complete, has passed.

## IV.   CONCLUSION

For the reasons set forth above, Brightview's Motion for Leave to File a Second Amended Complaint, ECF 132, is DENIED. A separate Order follows.


Dated: July 16, 2020                                        /s/
                                            Stephanie A. Gallagher
                                            United States District Judge