**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **BRIGHTVIEW GROUP, LP** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | *   **Civil Case No. SAG-19-2774** |
| | * |
| **ANDREW M. TEETERS,** *et al.*, | * |
| | * |
| **Defendants.** | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Brightview Group, LP ("Brightview") filed this lawsuit against its former employees, Andrew M. Teeters and Ross T. Dingman, and an entity created by Teeters and Dingman, Monarch Communities, LLC ("Monarch") (collectively "Defendants") in September, 2019.  Now pending before this Court are Omnibus Motions in Limine filed by Brightview, ECF 220, and by Defendants, ECF 223.  The motions have been fully briefed, ECF 226, ECF 227, ECF 236, ECF 241, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  Though it will not be possible to rule on many of these motions until specific evidence is proffered in the context of trial, the Court endeavors herein to set appropriate boundaries on the admissibility of the challenged evidence.  For the reasons explained below, the Court will grant in part, deny in part, and reserve in part the parties' various motions in limine.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Briefly, this action concerns a lawsuit by Brightview, a developer and operator of senior living communities.[1]  Between 2018 and 2019, two of Brightview's then-high level employees,

---

[1] The Court adopts by reference the factual discussions in its February, 2020 Amended Memorandum Opinion.  ECF 95; *see Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 121-28 (D. Md. 2020); its July, 2020 Memorandum Opinion, ECF 151, *see Brightview Grp., LP v. Teeters*,

Defendants Teeters and Dingman, used Brightview documents containing confidential, proprietary, and/or trade secret information to form their own competing senior living community development business, Defendant Monarch.  Brightview filed suit against Teeters, Dingman, and Monarch in this Court on September 19, 2019, seeking injunctive and monetary relief, and an emergency motion for temporary restraining order and preliminary injunction.  ECF 1, ECF 3. Brightview's Amended Complaint alleges six claims: (1) misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act ("DTSA") against all Defendants; (2) misappropriation of trade secrets in violation of the Maryland Uniform Trade Secrets Act ("MUTSA") against all Defendants; (3) breach of fiduciary duties/usurpation of corporate opportunity against Dingman and Teeters; (4) unfair competition against all Defendants; (5) civil conspiracy against all Defendants; and (6) trespass to chattels against Dingman.  ECF 38.

In May, 2020, Brightview sought leave to file a proposed second amended complaint ("PSAC").  ECF 133.  In relevant part, the amendments in the PSAC can be grouped into three major categories.  First, the PSAC included supplemental facts regarding an alleged campaign to pressure Brightview to abandon this lawsuit, instituted by nonparty Mark Stebbins, a former business partner of Brightview.  *Id.* ¶¶ 99-112.  The alleged pressure campaign included a lawsuit brought by Stebbins's investment vehicle against two Brightview-affiliated investment entities in state court in New Hampshire, *id.* ¶ 116, an arbitration brought by the same investment vehicle before the American Arbitration Association, *id.* ¶¶ 118-20, and a complaint against Brightview to the New Hampshire Bureau of Securities Litigation, *id.* ¶¶ 124-29.  Second, the PSAC sought to include among its damages in Counts I and II the costs that Brightview incurred in defending

---

2020 WL 4003168 at *1-2 (D. Md. July 15, 2020); and its March, 2021 Memorandum Opinion, ECF 205, *Brightview Grp., LP v. Teeters*, 2021 WL 1238501, at *1-4 (D. Md. Mar. 29, 2021).

against the alleged pressure campaign. *Id.* ¶¶ 139(F), 146(F)).  Finally, the PSAC sought to bring an additional cause of action against Teeters and Dingman for tortious interference with Brightview's business relations with Stebbins. *Id.* ¶¶ 174-85.  In July, 2020, this Court denied Brightview's motion to amend pursuant to Federal Rule of Civil Procedure 16(b)(4) as untimely and not excused for good cause.  ECF 151, ECF 152.  This Court also observed that Brightview's amendment may have failed even under the more liberal standard enumerated in Rule 15 because neither the relevant trade secrets statutes nor the collateral litigation doctrine would likely permit Brightview to recover costs arising from Stebbins's alleged pressure campaign. *Id.*

In February, 2020, this Court ruled on the parties' respective motions to exclude expert testimony.  ECF 203.  With regards to Brightview's proposed expert, Marylee P. Robinson, the Court excluded her testimony on disgorgement of Monarch's profits, head start damages, saved costs of development, and disgorgement of Teeters's and Dingman's earnings at Brightview. However, this Court held that Robinson's estimation of Brightview's lost profits was potentially admissible, provided that Brightview adduced sufficient evidence to create a triable question that Defendants' conduct caused it to lose a development opportunity.  ECF 202 at 6-7 ("If at trial or at summary judgment, Brightview fails to present sufficient evidence that it lost any particular opportunity, Robinson's prospective lost profits testimony would likely be excluded under both Rule 702 and Rule 403.").  With regards to Defendants' proposed expert, Michael Baldwin, the Court rejected Brightview's motion to exclude his testimony under Rule 37(c)(1) based on his refusal to answer questions about a confidential settlement agreement in an unrelated matter. *Id.* at 18.  The Court mused, however, that, "Brightview will be, of course, free to explore Baldwin's potential bias, including the prior litigation, on cross-examination at trial." *Id.* at 20.

On March, 26, 2021, this Court entered its Memorandum Opinion and Order resolving the parties' cross motions for partial summary judgment.  ECF 205.  First, with regards to Count I (DTSA) and Count II (MUTSA), the Court granted summary judgment in favor of Brightview on liability, and in favor of Defendants on the issue of whether Brightview was entitled to monetary damages under either statute.  *Id.* at 9-34, 44-45.  Although precluded from monetary damages for Counts I and II, the Court reserved for trial the question of whether Defendants' conduct was malicious and willful, such that Brightview may be entitled to recover reasonable attorneys' fees. *Id.* at 48.  Second, with regards to Count IV (unfair competition), the Court awarded summary judgment to Brightview on the issue of liability, and held that Brightview may pursue disgorgement of some portion of compensation it paid to Dingman and Teeters during their period of disloyalty.  *Id.* at 34, 45.  Third, this Court denied Defendants' motion for summary judgment as to Count V (civil conspiracy), concluding that Brightview's claim was not preempted by Maryland law insofar as it is premised on a conspiracy to wrongly acquire and use Brightview's non-trade secret confidential and proprietary information.  *Id.* at 49.  Finally, the Court issued a permanent injunction enjoining Defendants from accessing, using, or disclosing certain specified documents containing Brightview's trade secret or confidential information.  *Id.* at 36-37; *see also* ECF 207.

The parties subsequently engaged in negotiations, resulting in a settlement order dismissing the case in July, 2021.  ECF 209.  The parties ultimately failed to consummate the settlement, and the case was reopened in October, 2021.  ECF 213.  On November 16, 2021, this Court scheduled a jury trial to commence in September, 2022.  ECF 216.

## II.    LEGAL STANDARD

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *Hunt Valley Baptist Church, Inc. v. Baltimore Cty., Maryland*, No. CV ELH-17-804, 2018 WL 2717834, at *7 (D. Md. June 6, 2018) (unpublished) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983). Typically, pretrial motions in limine seek to exclude prejudicial evidence before it is offered at trial. *Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). These motions help to streamline a case by allowing the Court to avoid "lengthy argument at, or interruption of, the trial." *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987); *see also Changzhou Kaidi*, 102 F. Supp. 3d at 745 ("[Motions in limine] are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013))). Motions in limine further promote judicial efficiency by preserving the issues raised for appeal and eliminating the need for parties to renew their objections at trial, "just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it." *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996); *see* Fed. R. Evid. 103(a); *cf.* R. 103(a) advisory committee's note to 2000 amendment (acknowledging that Rule 103(a) "applies to all rulings on evidence . . . including so-called '*in limine*' rulings").

Generally, courts should grant a motion in limine "only when the evidence is clearly inadmissible on all potential grounds." *Dorman v. Anne Arundel Med. Ctr.*, No. MJG-15-1102, 2018 WL 2431859, at *1 (D. Md. May 30, 2018) (quoting *Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017)). Ultimately, rulings on these motions fall within the Court's "broad discretion." *Kauffman v. Park Place Hospitality Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012); *see*

*also United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (noting that evidentiary rulings fall within a trial court's discretion).

## III.   ANALYSIS

### A.   Cross-Motions Regarding Evidence Pertaining to Lost Profits

The parties' omnibus motions each seek rulings on evidence pertaining to potential lost profits.  In its third motion, Brightview moves to conditionally admit evidence regarding profits it lost in connection with senior living projects that were allegedly unlawfully usurped by Defendants.  ECF 220 at 11.  Conversely, Defendants' third motion seeks to preclude Brightview's expert from offering her opinion on lost profits, ECF 223-1 at 11; likewise, their sixth motion seeks to exclude evidence that Teeters and Dingman usurped any corporate opportunity, *id*. at 19.  For the reasons described below, this Court will reserve judgment on Brightview's third motion, and will deny Defendants' third and sixth motions.

Turning first to Brightview's motion, Brightview asks this Court to conditionally admit evidence pertaining to its lost profits in connection with senior living projects that Defendants allegedly usurped.  ECF 220 at 11.  This evidence would be provided mainly in the form of projections calculated by its expert, Robinson.  Brightview does not dispute that estimates of the amount it suffered from an usurped opportunity are only relevant if it can show that Defendants indeed usurped one or more corporate opportunities.  *See* ECF 220 at 14.  Because Brightview has not yet established that any of its corporate opportunities were usurped by Defendants, a ruling on its motion is reserved.

In circumstances such as these, the Federal Rules of Evidence's procedures for conditional relevancy govern.  The Federal Rules provide that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.  The court may admit the proposed evidence on the condition that the proof be introduced

6

later." Fed. R. Evid. 104(b). The advisory committee notes clarify that when applying Rule 104(b):

> The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted. If after all the evidence on the issue is in, pro and con, the jury could reasonably conclude that fulfillment of the condition is not established, the issue is for them. If the evidence is not such as to allow a finding, the judge withdraws the matter from their consideration.

Fed. R. Evid. 104 advisory committee's note to subdivision (b). *See also* 2 Handbook of Fed. Evid. § 104:2 (9th ed.) ("If relevancy depends upon facts of this kind, a prima facie showing of their existence is required as a prerequisite to admitting the evidence.").

Here, Brightview's proposed evidence is Robinson's lost-profits calculations. The relevance of Brightview's proposed evidence depends on the "condition" or fact that Defendants usurped a corporate opportunity. Accordingly, the immediate task before this Court is to render a preliminary determination regarding whether Brightview has made a prima facie showing that Defendants usurped an opportunity within its interest or expectancy. At this juncture, Brightview has failed to do so. Instead, Brightview merely outlines the methods it expects to deploy in search of evidence to fulfill the requisite relevancy condition. *See* ECF 220 at 13 ("In advance of trial, Brightview will require Defendants to supplement their prior discovery responses . . . Based on that information, Brightview will determine whether any of the Monarch projects constitute Brightview business opportunities that Teeters failed to disclose to Brightview . . .").[2] This Court expresses no view on the sufficiency of the evidence that Brightview will ultimately offer in

---

[2] This Court notes that this case will be three years old at the time of trial. The likelihood that Brightview will discover new evidence of opportunities Defendants usurped in 2019 diminishes as time elapses. Brightview suggests, however, that it "expects to offer evidence at trial that, at least as to the Montville site, Brightview had a demonstrable interest or expectancy in developing the site." ECF 236 at 7.

support of its claim, but merely concludes that where the relevance of proposed evidence is conditional on a fact—here, that Brightview lost a corporate opportunity—Brightview must make some showing that the fact occurred.  This Court will therefore reserve judgment on Brightview's motion.  As described in more detail below, this Court intends to bifurcate this trial into liability and damages phases, which will permit the decision about lost profits testimony to be determined by the jury's liability finding on usurpation.

Conversely, in their third motion, Defendants "request that the Court enter an order directing that Robinson is precluded from testifying at trial concerning any matters relating to Brightview's claimed damages."  ECF 223-1 at 14.  Defendants contend that this request is consistent with this Court's prior rulings.  *Id.* at 11.  On this point, Defendants are wholly incorrect.  As described above, this Court granted Defendants' challenges to several portions of Robinson's testimony, but rejected it insofar as it sought to exclude her testimony regarding Brightview's lost profits.  ECF 202 at 27.  Subsequently, this Court disallowed claims for lost profits under Counts I, II, and IV, but stipulated that Brightview "may be able to present evidence that Defendants usurped one or more corporate opportunities, along with any commensurate request for damages, in connection with Count III," for which neither party moved for summary judgment.  ECF 205 at 39.  Defendants did not demand, and Brightview has not yet been required, to produce competent evidence for the elements of its claim for usurpation of corporate opportunity.  Should Brightview convince a jury that usurpation occurred, then Robinson's testimony will be both relevant and admissible in the damages phase.  Defendants' third motion is accordingly denied.

This Court will also deny Defendants' sixth motion, which requests that Brightview "be precluded from presenting any claim, argument, or evidence at trial that it would have developed any corporate opportunity in the absence of the 'usurpation' of the opportunity by Defendants."

ECF 24.  Defendants did not move for summary judgment on Count III of Brightview's Amended Complaint; the claim accordingly remains viable pending resolution at trial.  If Defendants believe, as they belatedly insist, that Brightview lacks evidence sufficient to create a genuine dispute as to an essential element of Count III, they should have timely sought disposition of that claim at summary judgment.  They may not do so now.  *Thibodeaux v. Sterling*, 2020 WL 4286874, at *3 (D. Md. July 27, 2020) ("A motion in limine is not the appropriate procedural vehicle to dismiss a claim.").

**B. Cross-Motions Concerning Evidence of Alleged "Pressure Campaign"**

The parties' omnibus motions in limine include dueling requests for admission or exclusion, respectively, of evidence regarding a "mudslinging campaign" or "pressure campaign" executed by Defendants' affiliates after the commencement of this case.  The pressure campaign allegedly consisted of: (1) a lawsuit initiated by Stebbins's investment vehicle, Triple C Real Estate Investments, LLC ("Triple C"), against two Brightview-affiliated investment entities in state court in New Hampshire, ECF 220 at 15; ECF 132 ¶ 116; (2) an arbitration brought by Triple C before the American Arbitration Association, ECF 220 at 16; ECF 132 ¶¶ 118-20; and (3) a complaint against Brightview to the New Hampshire Bureau of Securities Litigation, ECF 220 at 16; ECF 132 ¶¶ 124-29.  Brightview insists that evidence of this alleged pressure campaign is relevant under the collateral litigation doctrine, and as evidence of willful and malicious misappropriation.  By contrast, Defendants argue that any relevance is substantially outweighed by the dangers of confusing the issues and wasting time.  This Court agrees with Defendants.  It will accordingly deny Brightview's fourth motion, and grant in part Defendants' first motion.

Brightview first argues that it should be permitted to introduce evidence of the alleged pressure campaign because the costs of defending against that campaign are recoverable from Defendants.  This assertion directly contravenes this Court's prior ruling, which rejected

Brightview's request to amend its complaint to allege facts regarding this pressure campaign, or to include among its prayer for relief the damages that Brightview allegedly incurred in defending against it.  *See generally* ECF 151.  Brightview justifies its instant motion by conclusorily asserting that this Court denied its previous attempt to inject these issues into this litigation "for unrelated reasons."  *See* ECF 220 at 21.  Brightview's emphasis on this Court's prior reasoning misses the point: this Court already denied Brightview's requests to recover damages arising from the alleged pressure campaign, and Brightview is bound by that ruling.  *See Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 571 (D. Md. 2001).  Brightview's attempt to relitigate this Court's decision, therefore, is more akin to a motion for reconsideration than a motion in limine.  Such a request is neither timely nor meritorious.  *See* Loc. R. 105.10 (specifying fourteen-day deadline to file motion for reconsideration); *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) (describing applicable standard of review).  Accordingly, this Court finds it unnecessary to revisit its denial of Brightview's prayer for relief from the costs of the pressure campaign, or to further elucidate upon its "grave concerns about the futility" of such a request.  ECF 151 at 14.

Brightview's next argument fares little better.  Brightview contends that evidence of the alleged pressure campaign is relevant to whether Defendants' misappropriation of trade secrets was willful and malicious, as is required to award attorneys' fees under the DTSA and MUTSA. *See* ECF 220 at 24.  This Court disagrees.  Brightview's proposed evidence is fatally plagued by (1) a lack of temporal proximity to the misappropriation or (2) attributability to the Defendants. First, the alleged pressure campaign began in October, 2019, months after Teeters and Dingman were terminated and much of the misappropriation occurred.  *See* ECF 205 at 20 (describing transmission of document including trade secrets on July 2, 2019, and acquisition of documents including trade secrets on July 15, and July 19, 2019).  Even absent other deficiencies in

Brightview's argument, this Court would still conclude that evidence pertaining to events occurring roughly three months after Defendants' misappropriation bear little relationship to the question of whether that misappropriation was willful and malicious.   Second, and more fundamentally, the pressure campaign is not probative of Defendants' mindsets because the Defendants themselves did not execute it.   Rather, Brightview alleges it was instituted by Triple C—at the direction of Stebbins—in large part against "Brightview investment entities . . . [that] are managed and owned in part by Brightview entities related to Brightview Group, LP."   ECF 236 at 9.   Simply put, an alleged mudslinging campaign perpetrated by nonparties to the suit against nonparties to the suit, which commenced months after Defendants' misappropriation occurred, is not relevant to whether Defendants' misappropriation was willful and malicious.

This Court further concludes that the negligible relevance of the alleged pressure campaign—to the extent it has any—is overwhelmed by the countervailing risks of wasting time and confusing the issues.   *See* Fed. R. Evid. 403.   Brightview requests that this Court permit it to elicit trial testimony and introduce documents regarding three separate legal proceedings, the origins of those proceedings, the information that Defendants disclosed to third parties to facilitate the prosecution of those proceedings, and Defendants' communications regarding the same.   *See* ECF 220 at 26.   Such an extensive foray into the alleged motivations of, and communications surrounding, multiple distinct and ancillary legal actions would constitute an unjustifiable use of the parties' time and the jury's attention.   Because delving into the alleged pressure campaign "would inevitably 'waste time and distract from the key issues in the lawsuit,'" this Court will deny Brightview's motion pursuant to Rules 402 and 403.   *IA Labs CA, LLC v. Nintendo Co.*, 857 F. Supp. 2d 550, 552 (D. Md. 2012) (quoting *CardioVention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 843 (D. Minn. 2007)).

For the reasons described above, Defendants' motion for an in limine ruling "precluding Plaintiff from either referring to or seeking to provide testimony in connection with an alleged 'mudslinging campaign,' as well as precluding any reference to the collateral New Hampshire Bureau of Securities Regulation investigation" will be granted.  ECF 223-1 at 11.  Defendants further request that this Court "further instruct[] Plaintiff's attorneys to caution each of its witnesses to strictly adhere to any order entered by the Court with respect to this specific Motion in Limine."  ECF 223-1 at 11.  Such language is unnecessary.  This Court is confident that the parties understand their continuing obligation to strictly adhere to all orders entered by this Court and to advise their witnesses accordingly.

### C. Brightview's Motion to Exclude Evidence Contrary to Court's Findings Regarding Dingman's Purposes for Downloading Brightview's Documents

In its first motion, Brightview seeks to exclude evidence contrary to this Court's earlier conclusions that Dingman lacked a legitimate business purpose to download Brightview's cross-operating reports, accounting accrual statements, operational guidelines manual, lease-up pace reports, and pricing sheets to his personal device.  ECF 220 at 6-8 (quoting ECF 205 at 23; 33).  Brightview argues that "[a]ny attempt[] by Dingman to offer yet another 'innocent' explanation for his acquisition of these Brightview business documents, or to offer already-rejected justifications, would not only contradict the Court's ruling . . . but would also potentially confuse the jury regarding the issues to be decided at trial."  *Id.* at 9-10.  For their part, Defendants aver that they do not intend to introduce evidence contrary to these findings, but that the motion should be denied to the extent it seeks to preclude evidence relevant to whether Defendants acted willfully and maliciously when they misappropriated Brightview's trade secrets.  ECF 226 at 3.

"Parties are indeed bound by ultimate findings made by the Court as a matter of law in its prior ruling[s], so long as those findings have relevance to the issues . . . which will be presented

to the jury." *Adams*, 141 F. Supp. 2d at 571.  Having earlier concluded that Dingman downloaded the specified documents for use in his business in Monarch, this Court will not permit evidence to the contrary.  As Defendants correctly note, however, they are permitted to introduce evidence relevant to whether Dingman's misappropriation was done out of ill will, hatred, or spite, because such evidence directly relates to whether attorneys' fees are permissible.  ECF 226 at 4.  The Court, at this stage, cannot be certain of the nature and extent of evidence Defendants intend to present on this issue.  It is enough at this juncture to grant Brightview's motion, while reiterating that Defendants are entitled to present evidence to refute Brightview's petition for attorneys' fees, so long as that evidence does not contradict the Court's earlier findings regarding Dingman's purpose.

### D. Brightview's Motion to Find Fifth Amendment Waiver

In its second motion, Brightview asks this Court to rule that Dingman and Teeters waived their respective rights to assert a Fifth Amendment privilege as to topics about which they have previously testified under oath.  ECF 220 at 10.  Brightview concedes that it has no information suggesting that criminal prosecution against either Defendant is pending or imminent, *id.* at 11, and notes that although both Defendants have testified multiple times in connection with this case, neither has previously asserted their Fifth Amendment rights not to testify.  *Id.*  Given these circumstances, this Court concludes that any determination on this issue would be both speculative and premature.  A ruling on this motion is therefore reserved.  If Dingman or Teeters indeed assert a Fifth Amendment privilege not to testify on any issue at trial, this Court will revisit the issue as necessary.

### E. Brightview's Motion to Admit Evidence Purporting to Show Bias of Defendants' Expert

In its fifth motion, Brightview requests that Defendants' expert, Michael Baldwin, be required to answer questions concerning a lawsuit filed against him in 2011 by HealthTrust, LLC

("HealthTrust"), the employer of Brightview's expert Alan C. Plush.  ECF 220 at 27-28.  The lawsuit—in which HealthTrust alleged that Baldwin misappropriated its trade secrets for use with his next employer—resulted in a confidential settlement agreement amongst the parties.  This Court previously denied Brightview's efforts to preclude Baldwin's testimony for failing to answer questions regarding the dispute, but noted that "Brightview will be, of course, free to explore Baldwin's potential bias, including the prior litigation, on cross-examination at trial."  ECF 202 at 20.  Now, Brightview seeks an in limine ruling confirming its ability to do so.

The Fourth Circuit has repeatedly affirmed that "[e]xploring bias is a proper topic for cross-examination . . ."  *Dorman v. Annapolis OB-GYN Assocs., P.A.*, 781 F. App'x 136, 144 (4th Cir. 2019) (quoting *United States v. Kiza*, 855 F.3d 596, 604 (4th Cir. 2017)).  Indeed, one of the major functions of cross-examination is to demonstrate that "the witness is biased, prejudiced, or untrustworthy for any reason."  *Id.* (quoting *United States v. Caudle*, 606 F.2d 451, 457 n.3 (4th Cir. 1979)).  Evidence proving bias may be shown through cross-examination or extrinsic evidence, and unlike other forms of impeachment evidence, are not limited by the strictures of Rules 404 or 608.  *Id.* at 145 (citing Fed. R. Evid. 404(b)(1); Fed. R. Evid. 608(b)).

Baldwin's potential bias, as evidenced through his prior litigation history, is an appropriate subject of questioning in Brightview's cross-examination.  *See id.* (expert's career history, including dispute with non-profit professional association, was relevant evidence of bias with respect to guidelines published by the association).  In opposition, Defendants argue that evidence pertaining to the prior litigation is not relevant.  ECF 226 at 13 ("The mere fact that an unrelated lawsuit was filed over ten (10) years ago is obviously not relevant to the instant case, especially when the prior litigation ended with a settlement.").  Defendants' contention is easily refuted: "[t]he probative value of this evidence lies in its ability to impeach Mr. [Baldwin]."  *Bilenky v.*

14

*Ryobi Ltd.*, 2014 WL 12591078, at *4 (E.D. Va. Oct. 22, 2014).  Defendants also argue that the introduction of this evidence will confuse the jury and create a sideshow, but there is little in the record to support their claims.  This Court trusts that the jury can readily differentiate Baldwin's prior lawsuit from the instant dispute, and accordingly concludes that any risk of confusion is not substantially outweighed by the probative value of the evidence.

On cross-examination, Brightview will be permitted to question Baldwin about the circumstances surrounding the lawsuit filed against him by HealthTrust, and the allegations contained in that complaint.[3]  The Court's ruling in this regard does not prejudice the Defendants' ability to object to any particular question or line of questioning during Baldwin's cross-examination.  Defendants' potential concerns regarding the confidentiality of the settlement agreement to which Baldwin is subject may be appropriately addressed by the sealing of any testimony elicited regarding the same, a remedy to which Brightview has already indicated its assent.  *See* ECF 236 at 11.  Brightview's fifth motion will therefore be granted.

### F. Brightview's Motion to Admit Evidence Concerning Defendants' Financial Resources

In its sixth motion, Brightview requests that this Court "should admit evidence concerning Defendants' financial resources to assist the jury in its calculation of punitive damages," which it will request for Count IV (unfair competition) and Count V (civil conspiracy).  ECF 220 at 29.  In opposition, Defendants assert Brightview's motion should be denied because it is not entitled to punitive damages.  In support of their position, Defendants argue that Brightview's express prayers for exemplary damages were rejected by this Court, *see* ECF 205 at 45; that neither Counts IV or V request punitive damages, *see* ECF 38; and that Maryland law—under which both Counts IV

---

[3] Of course, this Court expects that the scope of examination regarding this matter will be commensurate with an exploration of bias and will not transform the questioning into a "mini-trial" of the HealthTrust litigation.

and V arise—require a plaintiff's pleading to make such a demand specifically, *see Scott v. Jenkins*, 345 Md. 21, 37 (1997). This Court concludes that because federal law governs the resolution of the dispute, Brightview may be entitled to punitive damages for Counts IV and V, notwithstanding its failure to demand such relief in its pleading. *See* Fed. R. Civ. P. 54(c).

Federal courts resolving state law claims are required to apply substantive state law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Caselaw subsequent to *Erie* has "made it clear that *Erie*-type problems were not to be solved by reference to any traditional or common-sense substance-procedure distinction." *Id.* at 465-66. Rather, courts engage in a two-part inquiry to determine whether state procedural laws should govern. First, a court must determine whether there is a direct conflict between the state and federal dictates. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-52 (1980). If there is a direct conflict, the court need not proceed to the second step; it is bound to apply the Federal Rule unless the rule falls outside the scope of the Rules Enabling Act ("REA") or the constitutional grant of power. *Id.* at 748. If no direct conflict exists, courts continue to the second step, which considers whether declining to apply state law would be outcome-determinative, result in inequitable administration of the laws or encourage forum shopping. *See Hanna*, 380 U.S. at 468.

Turning to the first inquiry, this Court concludes that the heightened pleading standard the Maryland Court of Appeals described in *Scott* conflicts with the Federal Rules. Rule 54(c) provides that all final judgments, except those entered in default "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). This rule has "been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved." *Robinson v. Lorillard*

*Corporation*, 444 F.2d 791, 803 (4th Cir. 1971).  Courts in this district have consequently determined that a plaintiff's failure to demand punitive damages is not determinative of the plaintiff's ultimate relief.  *See Adams v. Montgomery Coll. (Rockville)*, 2012 WL 94614, at *4 n.1 (D. Md. Jan. 11, 2012) ("the presence (or absence) of such a demand is not dispositive of a party's ability to recover punitive damages.").  In contrast to the more liberal Federal Rules of Civil Procedure, the application of Maryland's pleading standards would categorically preclude Brightview from recovering punitive damages, irrespective of its potential entitlement to them. *See Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 716 (4th Cir. 1983).  When faced with such a direct conflict, and absent any indication that the federal rule offends the Constitution or REA, this Court is bound to apply federal law.[4]

Brightview's intention to seek punitive damages falls within the bounds of Rule 54(c).  The Fourth Circuit has cautioned that "[a] party will not be given relief not specified in its complaint where the 'failure to ask for particular relief so prejudiced the opposing party that it would be unjust to grant such relief.'"  *Atl. Purchasers*, 705 F.2d at 716 (quoting *United States v. Marin*, 651 F.2d 24, 31 (1st Cir. 1981)).  "In particular, a substantial increase in the defendant's potential

---

[4] Consistent with this Court's interpretation, another court in this district has similarly concluded that *Scott* does not govern a plaintiff's pleadings in federal court.  *See Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 490 n.8 (D. Md. 2009) ("[Defendants] contend that a higher degree of specificity is required to be pleaded for a request for punitive damages for a gross negligence claim under Maryland law . . . While that may be true for such a claim brought in state court, because this suit is in federal court, federal rules of civil procedure apply even when the substance of the claim is based upon state law." (internal citations omitted)).  Similarly, federal courts have declined to apply heightened state-law pleading standards, even when the applicable cause of action arises under state law.  *Vaile v. Willick*, 2008 WL 204477, at *6 (W.D. Va. Jan. 24, 2008)); *Great N. Ins. Co. v. Recall Total Info. Mgmt., Inc.*, 2014 WL 3845891, at *4 (D. Md. Aug. 1, 2014).  Although Defendants identify two cases in which federal courts applied *Scott*, neither distinguishes substantive and procedural law.  *See* ECF 226 at 17 (citing *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 296 (D. Md. 2005); *Louers v. Lacy*, 2011 WL 2434579 at * 3 (D. Md. June 15, 2011)).

ultimate liability can constitute specific prejudice barring additional relief under Rule 54(c)." *Id.* (citing *Goodman v. Poland*, 395 F. Supp. 660, 685 (D. Md. 1975)). Here, Defendants had actual notice of their potential exposure to punitive damages from the outset of this action, *see* ECF 1 ¶¶ 108(C); 115(C). Although Defendants apparently understood this Court's March, 2021 summary judgment ruling to have foreclosed such relief, *see* ECF 220 at 31, they have been made aware of Brightview's intention to pursue punitive damages months in advance of trial. Defendants will have ample time to conform its defense to Brightview's announced objectives and to prepare accordingly. *See Bowles v. Osmose Utilities Servs., Inc.*, 443 F.3d 671, 675 (8th Cir. 2006) (award of punitive damages was proper when defendants were notified three weeks in advance of trial of plaintiff's intention to seek punitive damages). Moreover, any risk of unfairness is further mitigated because the standard governing Brightview's request for punitive damages is substantially similar to that pertaining to Brightview's prayer for attorneys' fees, the latter of which both parties undisputedly understood to be pending resolution at trial. *Compare Spengler v. Sears, Roebuck & Co.*, 163 Md. App. 220, 246 (2005) ("[A] jury may award punitive damages only when a plaintiff has established 'actual malice' on the part of the defendant . . . 'Actual malice' is defined as '[a] sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud.'" (internal citations omitted) *with* 12 U.S.C. § 1836(D); Md. Code Ann., Com. Law § 11-1204(3) (permitting recovery of reasonable attorneys' fees if "the trade secret was willfully and maliciously misappropriated.").

This Court anticipates conducting a bifurcated trial in this action. The jury will be informed at the outset that it will deliberate twice. It will first resolve substantive liability issues and then will consider issues relating to damages. Accordingly, Brightview must initially prove by clear and convincing evidence that Defendants acted with actual malice before it would be permitted to

introduce any evidence relevant to the figure to be awarded.  *See Spengler*, 163 Md. App. at 246; *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 2011 WL 4596043, at *10 (D. Md. Sept. 30, 2011) (specifying that plaintiffs must show actual malice by clear and convincing evidence), *aff'd*, 499 F. App'x 971 (Fed. Cir. 2013).  If, and only if, Brightview does so, a jury may appropriately consider evidence regarding Defendants' financial positions for purposes of assessing punitive damages, if any.  *See Stamathis v. Flying J, Inc.*, 389 F.3d 429, 442 (4th Cir. 2004) ("a defendant's financial position is a proper consideration in assessing punitive damages").  This Court will accordingly grant Brightview's sixth motion, conditional on an initial  jury determination that the standard for punitive damages has been satisfied.

### G.  Brightview's Motion to Admit Testimony of David Carliner and Alan Plush

Brightview's seventh motion seeks the admission of testimony from David Carliner and Alan Plush.  ECF 220 at 34.  In opposition, Defendants do not contend that either witness is unqualified to testify as an expert in the senior living industry, or that either lacks experience or knowledge to opine on the value of Brightview's intellectual property.  Rather, Defendants insist because "neither Mr. Plush nor Mr. Carliner are permitted to provide any affirmative opinion testimony to the jury on *any* subject as part of Brightview's case-in-chief, a determination with regard to the substance, scope and admissibility of Brightview's rebuttal case is unripe at this juncture."  ECF 226 at 20.

Defendants correctly observe, and Brightview does not dispute, that Brightview did not timely designate Carliner or Plush as affirmative experts.  Carliner[5] and Plush, therefore, may not testify affirmatively in Brightview's case-in-chief, but would instead be limited to testimony to rebut the opinions testified to by Defendants' experts.  This Court acknowledges that without

---

[5] Brightview seeks to introduce Carliner as a hybrid fact/expert witness.  In his capacity as a fact witness only, Carliner may be called to testify in Brightview's case-in-chief.

knowing specifically the testimony that will be offered during Defendants' case-in-chief, this Court plainly cannot anticipate or resolve all possible objections to the testimony that Brightview will seek to elicit from Carliner or Plush in rebuttal.  Even so, this Court concludes that a ruling confirming Brightview's capacity to call Carliner and Plush to testify as rebuttal experts is consistent with the underlying purposes of in limine motions—narrowing evidentiary issues and mitigating unnecessary interruptions at trial.  *See Banque Hypothecaire*, 652 F. Supp. at 1401; *Hunt Valley Baptist Church*, 2018 WL 2717834, at *7.  It is sufficient at this juncture, therefore, to rule that Carliner and Plush will be permitted to testify as expert witnesses only in a rebuttal capacity.  This Court's ruling is without prejudice to Defendants' rights to raise objections to the substance, scope, or admissibility of either Carliner's or Plush's testimony as they may arise.

**H.  Brightview's Motion to Admit Evidence on Theory of Unjust Enrichment**

In its eighth motion, Brightview requests that this Court permit "evidence on Defendants' saved costs of development and the link between their disclosure of Brightview's trade secrets and Stebbins's $3 million investment in Monarch."  ECF 220 at 40.  This Court previously considered and rejected both theories of damages.  *See* ECF 205 at 40.  Specifically, this Court concluded that Brightview did not "submit[] any reliable method for calculating the dollar value of the time and resources Defendants saved by using Brightview's trade secrets," and accordingly could not use "saved costs of development" as a proxy for Defendants' unjust enrichment.  ECF 205 at 42.  Moreover, this Court found that Brightview presented insufficient evidence that its protected information induced Stebbins to make his investment in Monarch, such that the investment could potentially be disgorged.  *Id.* at 40.  Having ruled in advance of trial, no evidence on these issues are relevant.  Brightview's eighth motion is denied.

**I.   Brightview's Motion to Strike Defendants' Affirmative Defenses**

Brightview finally moves to strike several affirmative defenses contained in Defendants' respective Answers to the Amended Complaint.  ECF 220 at 40-42 (quoting ECF 51, ECF 52, ECF 53).  This motion in limine is plainly improper.  It does not identify any evidence that Brightview seeks to exclude, nor does it argue that granting the motion would change the evidence presented at trial in any way.  *See United States v. Gibson*, No. 2:17CR126, 2018 WL 4903261, at *2 (E.D. Va. Oct. 9, 2018) ("The purpose of a motion in limine is to permit the trial court 'to rule in advance of trial on the relevance of certain forecasted evidence . . .'" (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).  More accurately, Brightview's request is functionally a motion to strike—which Brightview itself concedes is untimely—or a partial motion for summary judgment to preclude various affirmative defenses at trial.  These are not proper aims of a motion in limine. *See TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344-45 (S.D.N.Y. 2003) ("Thus, in the guise of addressing limited evidentiary issues, the parties' motions in limine would effectively serve as a form of advance trial of substantive portions of the case . . . the Court deems them impermissible[.]").  Brightview also argues that Defendants' affirmative defenses should be struck to the extent that they are precluded by this Court's prior rulings.  It is, of course, true that Defendants may not raise legal arguments that this Court already rejected, or that are otherwise foreclosed by its earlier determinations.  Brightview's motion is not necessary to enforce this basic precept of law, and will be denied.

**J.   Defendants' Motion to Exclude Evidence Regarding Civil Conspiracy**

In their second motion, Defendants request that "any evidence relating to Brightview's civil conspiracy claim should be excluded because Brightview has not suffered any misappropriation harm arising out of the alleged conspiracy, thereby rendering the claim superfluous."  ECF 223-1 at 5.  In support of its motion, Defendants raise a number of substantive

21

arguments regarding Brightview's failure to establish the essential elements of its claim, Brightview's lack of cognizable harm, and caselaw regarding Maryland's interpretation of the intracorporate conspiracy doctrine. *See id.* Defendants' motion will be denied.

As this Court has explained throughout, motions in limine are properly employed to exclude prejudicial evidence and narrow the scope of evidentiary issues to be determined at trial. *See Changzhou Kaidi*, 102 F. Supp. 3d at 745. Defendants' motion does not identify any specific evidence or testimony that it seeks to exclude, and is subject to denial on this ground alone. *See A.Hak Indus. Servs. BV Techcorr USA, LLC, Techcorr USA Mgmt., LLC v. A.Hak Indus. Servs. B.V.*, 2014 WL 12591696, at *1 (N.D.W. Va. Dec. 18, 2014) ("when a motion in limine seeks to exclude a general category of evidence, the best course of action is to deny the motion and see how the case unfolds" (citing *E.I. DuPont De Nemours & Co. v. Kolon Indus., Inc.*, 564 Fed. Appx. 710 (4th Cir. 2014)). More fundamentally, Defendants' motion improperly seeks dismissal of a claim under the guise of an evidentiary ruling. Courts in this district have repeatedly condemned such efforts, and this Court will do so again now. *See Banque Hypothecaire*, 652 F. Supp. at 1401 (the practice of filing "last-minute summary judgment motions . . . [that] sneak up in limine clothing shortly before trial, after the deadline for orderly filing of summary judgment motions has passed . . . are strongly to be discouraged."); *Thibodeaux*, 2020 WL 4286874, at *3 ("Defendants here do not seek to limit potentially prejudicial evidence, but instead seek the wholesale exclusion of Plaintiffs' informed consent claim. A motion in limine is not the appropriate procedural vehicle to dismiss a claim."). Defendants' second motion will be denied.

### K. Defendants' Motion to Exclude Evidence of Potential Criminal Violations

In their fourth motion, Defendants request an in limine ruling that "Brightview should be precluded from offering any evidence or argument that Defendants have committed crimes, engaged in criminal acts, or otherwise violated any criminal laws at trial." ECF 223-1 at 14. In

support of its argument, Defendants assert that Brightview has utilized overheated rhetoric throughout the course of litigation to invoke the specter of criminality. *See id.* at 14-15. Defendants insist that its requested order is required to ensure that potentially prejudicial insinuations of criminal conduct do not reach the jury.

This Court acknowledges that the pending action is entirely civil, and that unnecessary references to criminal violations or potential criminal liability are irrelevant and potentially prejudicial. Even so, the scope of Defendants' proposed order is both vague and potentially overbroad. As Brightview observes, testimony and evidence that is relevant to outstanding issues in this case may inevitably—albeit tangentially—be evocative of criminal conduct. *See* ECF 227 at 26 ("Certainly, terms such as 'stole,' 'took,' 'pocketed,' and 'theft' are such common, standard parlance that they cannot be ruled out of bounds."). This Court is satisfied by Brightview's assurances that it "does not intend to argue at trial that Defendants' conduct violates criminal statutes," and that it "does not intend that any of its witnesses will characterize Defendants' conduct as constituting violations of criminal statutes." *Id.* It will accordingly grant Defendants' motion insofar as it seeks to exclude evidence or argument that Defendants' conduct violated criminal statutes, and deny the motion insofar as it would preclude the admission of any other relevant evidence or the use of particular phraseology.

**L. Defendants' Motion to Exclude Arguments or Evidence Regarding Disgorgement**

In their fifth motion, Defendants request that Brightview "be precluded from offering any evidence or argument that Teeters or Dingman should disgorge or forfeit any compensation they received from Brightview to the jury." ECF 223-1 at 18. Defendants argue that because disgorgement of profits is an equitable remedy, it may not be submitted to the jury for resolution. Instead, Defendants propose that "the issue of whether Teeters or Dingman is liable for unfair competition should be presented to, and resolved by, the jury. In the event that the jury determines

that Teeters or Dingman is liable for unfair competition, then at that point the Court should separately resolve the issue of whether Brightview is entitled to the equitable remedy of disgorgement, and if so, in what amount." ECF 223-1 at 19.

Defendants' motion is somewhat puzzling, given that this Court has already concluded that Teeters and Dingman are liable for unfair competition. *See* ECF 205 at 34 ("[B]ecause there is no factual dispute that Defendants misused the other documents, the issue regarding the operating agreements does not prevent the Court from granting summary judgment against Defendants on Brightview's unfair competition claim."). Having been affirmatively determined by this Court as a matter of law, the question of whether Teeters and Dingman are liable for unfair competition will not be presented to the jury. Moreover, Defendants' assertion that Brightview's efforts to recoup some portion of the compensation paid to Dingman and Teeters may not be resolved by the jury is legally incorrect. Where, as here, a plaintiff seeks to recover monetary damages from a defendant's unjust enrichment, the remedy is at law. *See Ver Brycke v. Ver Brycke*, 379 Md. 669, 696 (2004) ("We repeatedly have stated that the strictures of common law pleading, whereby the causes of action pled define the action, have been replaced by fact-based pleading so that remedies sought serve to delineate the type of action, whether it be in law or equity."). Consistent with this principle, "Maryland courts and federal courts have consistently held that a defendant facing an unjust enrichment claim to recover money is entitled to a jury trial." *In re Com., LLC*, 2015 WL 4055477, at *2 (D. Md. July 1, 2015); *see also* ECF 227 at 30-31 (citing *Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 374 (2001); *Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 482 (2002); *Allora, LLC v. Cambridge Builders of Johnston Cty., Inc.*, 532 F. App'x 349, 351 (4th Cir. 2013); *De Simone v. VSL Pharm., Inc.*, 395 F. Supp. 3d 617, 634 (D. Md. 2019); *In re Outsidewall Tire Litig.*, 748 F. Supp. 2d 543, 550 n.16 (E.D. Va. 2010), *aff'd sub nom. Tire*

*Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292 (4th Cir. 2012); *Mona v. Mona Elec. Grp., Inc.*, 176 Md. App. 672, 724-25 (2007)).[6]

At this stage, the primary remedy sought by Brightview for its unfair competition claim is damages for some portion of compensation paid to Dingman and Teeters during their period of disloyalty.  Claims seeking to recover monetary damages sound in law, and may accordingly be resolved by a jury.  Defendants' fifth motion will be denied.

## IV.   CONCLUSION

For the reasons set forth above, Brightview's Omnibus Motions in Limine, ECF 220, and Defendants' Omnibus Motions in Limine, ECF 223, will be GRANTED IN PART, DENIED IN PART, and RESERVED IN PART, consistent with this Opinion.  A separate order resolving these motions follows.  This Court will provide additional information regarding its intent to bifurcate the trial into two phases by separate communication.

Dated:  March 22, 2022                                      _____/s/_____
                                                                Stephanie A. Gallagher
                                                                United States District Judge

---

[6] Defendants' reliance on *Sailor v. Hubbell, Inc.*, 4 F.3d 323 (4th Cir. 1993) is misplaced.  ECF 223-1 at 18.  *Sailor* described the proper procedures for litigants seeking both equitable and legal remedies under the Age Discrimination in Employment Act ("ADEA").  Defendants' citations to *Mattingly v. Mattingly*, 92 Md. App. 248, 259 (1992) and *Merritt v. Craig*, 130 Md. App. 350, 366 (2000) are similarly unavailing.  Both cases were decided prior to *Ver Brycke*, 379 Md. at 696, in which the State's highest court clarified that cases are to be defined by the remedies sought.